## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

FRESENIUS KABI USA, LLC,

          Plaintiff,

    v.

PAR STERILE PRODUCTS, LLC, and
PAR PHARMACEUTICAL
COMPANIES, INC.,

          Defendants.

**No. 2:16-cv-04544 (SDW) (LDW)**

**DECLARATION OF GEORGE C. JONES IN SUPPORT OF JOINT MOTION TO PERMANENTLY SEAL CONFIDENTIAL INFORMATION CONTAINED IN DOCKET NUMBERS 256 AND 257**

Motion Date: June 21, 2021

I, George C. Jones, declare as follows:

1.    I am an attorney-at-law admitted to the bar of the State of New Jersey and a partner in the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP.  I am counsel of record for Defendants Par Sterile Products, LLC and Par Pharmaceutical Companies, Inc. (collectively, "Par") in the above-referenced matter.

2.    I am over 18 years of age, and I have personal knowledge of the facts set forth in this Declaration in support of the Joint Motion to Permanently Seal Confidential Information Contained in Docket Numbers 256 and 257 submitted by Plaintiff Fresenius Kabi USA, LLC ("Fresenius") and Par (collectively "the parties").

3.     I submit this Declaration in accordance with Local Civil Rules 7.1(d)(4) and 5.3(c)(3).  No brief is necessary.

4.     Local Civil Rule 5.3(c) authorizes the Court to seal and/or otherwise restrict public access to materials submitted in support of a motion.

5.     Pursuant to Local Civil Rule 5.3(c)(2), the parties have conferred regarding the materials and information that are the subject of the motion to seal. The parties have agreed upon the instant motion and are not aware of any objections.

6.     The parties now file a Joint Motion to Permanently Seal Confidential Information Contained in Docket Numbers 256 and 257 to seal their respective supplemental summary judgment briefings.  The Joint Motion to Permanently Seal Confidential Information Contained in Docket Numbers 256 and 257 is made in accordance with the terms proposed in the parties' November 26, 2019 joint letter (**Exhibit D**, November 26, 2019 Joint Letter) to this Honorable Court regarding the procedure for sealing summary judgment materials.

7.     In accordance with the Court's December 3, 2019 Order (Dkt. No. 225), which granted the parties' request to refile a motion to seal in accordance with the terms proposed in the parties' November 26, 2019 joint letter, the parties have submitted redacted, publicly available versions of their supplemental summary judgment briefing.  (*See* Dkt. Nos. 258, 259.)

8.   In accordance with the Court's December 3, 2019 Order (Dkt. No. 225), the bases for sealing and the clearly defined and serious injury that would result if relief is not granted are explained in the accompanying **Exhibit A**, Topic Index.

## BACKGROUND

9.   On June 19, 2017, the Court entered the parties' Discovery Confidentiality Order.  (Dkt. No. 55.)

10.   On July 12, 2019, August 15, 2019, and September 5, 2019, the parties filed their respective summary judgment motion briefing materials under temporary seal.  (Dkt. Nos. 150–52, 154, 163–64, 167–73, 176, 179–85, 188–92, 194–96, 199, 201–02.)

11.   In accordance with the Court's July 11, 2019 Stipulated Consent Order Regarding Filing of Summary Judgment Materials (Dkt. No. 148), the parties filed on the public docket on September 18, 2019 redacted copies of all summary judgment briefing materials that were originally filed under temporary seal pursuant to Local Civil Rule 5.3(c)(2)(ii).  (*See* Dkt. Nos. 203–15.)  On September 19, 2019, the parties also filed a Joint Motion to Permanently Seal Confidential Information regarding materials from the parties' summary judgment briefings.  (Dkt. No. 218.)

12.     On November 6, 2019, a telephone conference was held between Magistrate Judge Wettre and counsel for the parties.  (Dkt. No. 223.)

13.     On November 26, 2019, the parties submitted a joint letter, via email, requesting that the parties' joint motion to seal (Dkt. No. 218) be withdrawn without prejudice to refiling and proposing terms to refile their motion.  (*See* **Exhibit D**, November 26, 2019 Joint Letter; Dkt. No. 225.)

14.     On December 3, 2019, the Court granted the parties' application to withdraw their motion without prejudice and ordered the parties to refile in accordance with the terms proposed in the parties' November 26, 2019 letter.  The Court further ordered that the September 19, 2019 motion to seal (Dkt No. 218) be terminated pending adjudication of the forthcoming motion.  (*See* Dkt. No. 225.)

15.     Pursuant to the terms of the parties November 26, 2019 letter, on February 3, 2020 the parties refiled their Joint Motion to Permanently Seal Confidential Information, as well as redacted copies of all summary judgment briefing materials from their respective summary judgment motions.  (*See* Dkt. Nos. 233–39).  The Court granted the Joint Motion to Permanently Seal Confidential Information on March 5, 2020.  (*See* Dkt. No. 242.)

16.     On January 11, 2021, the United States Court of Appeals for the Third Circuit vacated and remanded the Court's February 25, 2020 Order on summary judgment.  (*See* Dkt. Nos. 241, 248.)

- 4 -

17.    On March 5, 2021, this Court ordered supplemental summary judgment briefing.  (*See* Dkt. No. 255.)

18.    On April 9, 2021, Par filed its supplemental summary judgment briefing under temporary seal.  (*See* Dkt. No. 256.)

19.    On May 10, 2021, Fresenius filed its supplemental summary judgment briefing under temporary seal.  (*See* Dkt. No. 257)

20.    Pursuant to the terms of the parties November 26, 2019 letter, on May 24, 2021, the parties filed on the public docket redacted versions of their supplemental summary judgment briefing.  (*See* Dkt. Nos. 258, 259.)

21.    The redacted versions of the supplemental summary judgment briefing contain redactions that identify the topics that warrant sealing the redacted information.  The bases for sealing and the clearly defined and serious injury that would result if relief is not granted are explained in the accompanying **Exhibit A**, Topic Index.

## GOOD CAUSE EXISTS TO SEAL CERTAIN MATERIALS SUBMITTED BY THE PARTIES

22.    Local Civil Rule 5.3(c) authorizes the Court to seal and/or otherwise restrict public access to materials submitted in support of a motion and requires the Court to consider:

(a) the nature of the materials . . . at issue; (b) the legitimate private or public interest which warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; (d) why a less

restrictive alternative to the relief sought is not available; (e) any prior order sealing the same materials in the pending action; and (f) the identity of any party or nonparty known to be objecting to the sealing request.

23.     A movant must demonstrate that "good cause" exists to seal court records in order to overcome the presumption favoring a public right of access. *Securimetrics, Inc. v. Iridian Technologies, Inc.*, No. 03–4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). "Good cause means 'that disclosure will work a clearly defined and serious injury to the party seeking closure; [t]he injury must be shown with specificity.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 673 (3d Cir. 2019) (citing *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).

24.     The Confidential Materials identified as **Topic A** of **Exhibit A** contain and/or reference information related to proprietary trade secrets of the parties.

a.     These materials contain and/or reference proprietary technical information not generally known or reasonably ascertainable by the public, including but not limited to product formulation, product development, and research and development efforts. The parties have a strong and legitimate basis for sealing these highly confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

b.      The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic A** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm.  For example, a competitor would use secret information about the parties' product formulation and development to unfairly develop competing products that harm a party's competitive standing.  *See Mine Safety Appliances Co. v. North River Ins. Co.*, No. 2:09-cv-348, 73 F. Supp. 3d 544, 560 (W.D. Penn. Mar. 31, 2014) ("The traditional form of confidential commercial information that militates against disclosure is the existence of trade secrets where disclosure would create a sufficient threat of irreparable harm.") (citation omitted).

25.      The Confidential Materials identified as **Topic B** of **Exhibit A** contain and/or reference information related to financial information of the parties.

a.      These materials contain and/or reference financial information (including sales, pricing, or inventory data), analysis, or discussions regarding past or projected financial performance.  The parties have a strong and legitimate basis for sealing these highly confidential and competitively

sensitive materials and these materials do not concern any public officials or contain information of public concern.

b.     The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic B** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm.  For example, competitors would use the confidential information about the parties' current or past financial, sales, pricing, or inventory information to strategically enhance their market or negotiation position. *See Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012) ("District Courts in the Third Circuit have also repeatedly found serious harm in disclosing financial information which would injure a party's standing in the competitive marketplace.") (citing *Hershey Co. v. Promotion in Motion, Inc.*, No. 07–1601, 2010 WL 1812593, at *3 (D.N.J. May 4, 2010); *Mars, Inc. v. JCM Am. Corp.*, No. 05–3165, 2007 WL 496816, at *2 (D.N.J. Feb. 13, 2007); *Faulman v. Sec. Mut. Fin.*, No. 04–5083, 2006 WL 1541059, at *1 (D.N.J.

June 2, 2006); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03–

6025, 2007 WL 2085350, at *8 (D.N.J. July 18, 2007)).

26.     The Confidential Materials identified as **Topic C** of **Exhibit A**

contain and/or reference information related to the supplier relationships of the

parties.

      a.     These materials contain and/or reference sensitive internal

discussions regarding or communications with the parties' suppliers,

including but not limited to negotiations, agreements, contracts, and

purchase orders from API suppliers.  The parties and non-parties referenced

in the materials have a strong and legitimate basis for sealing these highly

confidential and competitively sensitive materials and these materials do not

concern any public officials or contain information of public concern.

      b.     The parties and non-parties will suffer clearly defined and

serious irreparable injury if the materials identified as **Topic C** are not

sealed.  Public disclosure will harm the parties' and non-parties' current and

prospective businesses by allowing competitors to gain improper and unfair

competitive advantage in the highly competitive pharmaceutical industry as

well as potentially damage the parties' business relationships and goodwill,

thereby causing significant financial damage or other irreparable harm.  For

example, competitors would use the confidential information regarding a

party's communications, strategies, negotiations, and agreements with suppliers to damage the party's relationship with its suppliers in order to enhance the competitors' market or negotiation position. *See Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) ("Generally, the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships may be the basis for a finding of irreparable harm."); *Alexander Interactive Inc. v. Adorama, Inc.*, No. 12-civ-6608, 2014 WL 4346174, at *2 (S.D.N.Y. Sep. 2, 2014) (finding sealing justified because the "non-public information about pricing, credit, and termination terms, which, if made public, could adversely effect Samsung's relationships with other dealer-customers, as well as Adorama's relationships with other suppliers").

27.     The Confidential Materials identified as **Topic D** of **Exhibit A** contain and/or reference sensitive information related to customer relationships of the parties.

a.      These materials contain and/or reference internal discussions regarding or communications with customers, including but not limited to customer complaints, negotiations, agreements, contracts, and purchase orders from customers.  The parties and non-parties referenced in the materials have a strong and legitimate basis for sealing these highly

- 10 -

confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

> b.      The parties and non-parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic D** are not sealed.  Public disclosure will harm the parties' and non-parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm.  For example, competitors would use confidential information regarding a party's communications, strategies, negotiations, and agreements to damage the party's relationship with its customers in order to enhance the competitors' market or negotiation position.  *See Saturn Wireless Consulting, LLC v. Aversa*, No. 17-1637, 2017 WL 1538157, at *20 ("Saturn has a legitimate interest in keeping its customer-specific confidential information from competitors . . . and in protecting its investment in customer relationships and goodwill."); *Laidlaw*, 20 F. Supp. 2d at 766 ("Generally, the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships may be the basis for a finding of irreparable harm.").

28.     The Confidential Materials identified as **Topic E** of **Exhibit A** contain and/or reference sensitive information related to the regulatory information of the parties.

a.      These materials contain and/or reference sensitive regulatory submissions and communications between the parties and government agencies that reveal sensitive internal business information.  The parties have a strong and legitimate basis for sealing these highly confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

b.      The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic E** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm.  For example, competitors would use confidential information from a party's regulatory communications or submissions regarding product formulation and development details, business strategies, and anticipated product launch information to harm the party's competitive standing.  *See Bracco*, 2007 WL

2085350, at *5 (granting a motion to seal a party's correspondence with the FDA because it had "a legitimate public interest in protecting non-public correspondence with the governmental agency primarily responsible for its regulation," and therefore, the party "would face a serious injury if the regulatory documents were available for public access").

29.    The Confidential Materials identified as **Topic F** of **Exhibit A** contain and/or reference information related to business strategy information of the parties.

      a.    These materials contain and/or reference information related to business strategy including, but not limited to, analyses, plans, or other discussions regarding product research, product development, manufacturing, product launch, sales, pricing, marketing, market and competition dynamics, supplier and customer dynamics, or potential acquisitions.  The parties have a strong and legitimate basis for sealing these highly confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

      b.    The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic F** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the

parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm.  For example, competitors would easily use the confidential information regarding a party's business strategy to strategically undercut a party's business goodwill and relationships with suppliers, customers, or other third-parties in order to enhance the competitors' market or negotiation position.  *See Curlin Medical Inc. v. ACTA Medical, LLC*, 2:16-cv-02464, 2017 WL 2729268, at *3 (D.N.J. Jan. 5, 2017) (granting the parties' motion to seal because "the confidential materials contain valuable, proprietary, and highly sensitive business information relating to the parties' respective businesses, including but not limited to financial information, business strategies, research and development, business relationships, customer information, and pricing information").

30.     The Confidential Materials identified as **Topic G** of **Exhibit A** contain and/or reference sensitive information related to personal private information.

     a.     These materials contain and/or reference personal information, such as personal financial information, that should be sealed for privacy concerns.  Non-party individuals have a strong and legitimate basis for sealing these materials to protect the privacy interests of certain individuals

- 14 -

and will suffer a clearly defined and serious irreparable injury if the materials identified as **Topic G** are publicly disclosed. *See Barnes v. Hauck*, No. 12-2705, 2013 WL 3216171, at *1 (D.N.J. June 23, 2013) ("[T]here is a clear interest to protect the confidentiality and privacy concerns of Petitioner that outweighs any public interest . . . .").

31.    The Confidential Materials identified as **Topic H** of **Exhibit A** contain and/or reference expert opinion or testimony that reveal highly confidential and sensitive competitive information regarding a party's actual or hypothetical business decisions.

      a.    Similar to materials identified as **Topic F**, **Topic H** materials contain and/or reference expert opinion related to the parties' business strategy such as expert opinion of the content and timing of a party's hypothetical business decisions.  The parties have a strong and legitimate basis for sealing these highly confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

      b.    The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic H** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in

the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm. For example, competitors would use expert opinion about a party's Abbreviated New Drug Application ("ANDA") regulatory filing with the FDA to strategically undercut a party's business goodwill and relationships with suppliers, customers, or other third-parties in order to enhance the competitors' market or negotiation position. *See Curlin Medical Inc.*, 2017 WL 2729268, at *3 (granting the parties' motion to seal because "the confidential materials contain valuable, proprietary, and highly sensitive business information relating to the parties' respective businesses, including but not limited to financial information, business strategies, research and development, business relationships, customer information, and pricing information.").

32.     The Confidential Materials identified as **Topic I** of **Exhibit A** contain and/or reference expert opinion or testimony that reveal highly confidential and sensitive competitive information regarding actual or hypothetical economic, market and/or competitive dynamics, including but not limited to expert opinion regarding but-for market shares, prices, sales, or price margins.

a.     Similar to materials identified as **Topic B**, **Topic I** materials contain and/or reference expert opinion or testimony relevant to the parties'

- 16 -

financial information (including sales, pricing, or inventory data), analysis, or discussions regarding past or projected financial performance. The parties have a strong and legitimate basis for sealing these highly confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

b.      The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic I** are not sealed. Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm. For example, competitors would use expert opinion about a party's estimated hypothetical market shares, price, sales, or price margins to deduce a party's actual or projected financial performance to strategically enhance their market or negotiation position. *See Goldenberg*, 2012 WL 15909, at *3 ("District Courts in the Third Circuit have also repeatedly found serious harm in disclosing financial information which would injure a party's standing in the competitive marketplace.") (citing *Hershey*, 2010 WL 1812593, at *3; *Mars*, 2007 WL

496816, at *2; *Faulman*, 2006 WL 1541059, at *1; *Bracco*, 2007 WL 2085350, at *8).

33.     The Confidential Materials identified as **Topic J** of **Exhibit A** contain and/or reference expert opinion or testimony that reveal highly confidential and sensitive competitive information regarding estimated damages, financial and/or economic information, including but not limited to estimates of damages under hypothetical scenarios.

a.      Similar to materials identified as **Topic B**, **Topic J** materials contain and/or reference expert opinion or testimony relevant to the parties' financial information (including sales, pricing, or inventory data), analysis, or discussions regarding past or projected financial performance.  The parties have a strong and legitimate basis for sealing these highly confidential and competitively sensitive materials and these materials do not concern any public officials or contain information of public concern.

b.      The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic J** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant

financial damage or other irreparable harm.  For example, competitors

would use expert opinion about a party's estimated damages to deduce a

party's actual or projected financial performance to strategically enhance

their market or negotiation position.  *See Goldenberg*, 2012 WL 15909, at *3

("District Courts in the Third Circuit have also repeatedly found serious

harm in disclosing financial information which would injure a party's

standing in the competitive marketplace.") (citing *Hershey*, 2010 WL

1812593, at *3; *Mars*, 2007 WL 496816, at *2; *Faulman*, 2006 WL

1541059, at *1; *Bracco*, 2007 WL 2085350, at *8).

34.     The Confidential Materials identified as **Topic K** of **Exhibit A**

contain and/or reference expert opinion or testimony that reveal highly confidential

and sensitive competitive information regarding patent validity or infringement.

      a.       These materials contain and/or reference highly confidential

and sensitive competitive information that reveal sensitive competitive

information regarding patent validity or infringement, including but not

limited to expert opinion regarding the likelihood of success in patent

litigation.  The parties have a strong and legitimate basis for sealing these

highly confidential and competitively sensitive materials and these materials

do not concern any public officials or contain information of public concern.

b.      The parties will suffer clearly defined and serious irreparable injury if the materials identified as **Topic K** are not sealed.  Public disclosure will harm the parties' current and prospective businesses by allowing competitors to gain improper and unfair competitive advantage in the highly competitive pharmaceutical industry as well as potentially damage the parties' business relationships and goodwill, thereby causing significant financial damage or other irreparable harm.  For example, competitors would use expert opinion about the likelihood of success in patent litigation to assert new patent invalidity or infringement claims against the parties.

35.    The Confidential Materials identified as **Topic L** of **Exhibit A** contain and/or reference confidential documents produced by, or deposition testimony from, Bachem Americas, Inc., and Bachem AG (together, "Bachem").

a.      Bachem and the parties have a strong and legitimate basis for sealing this material.  Bachem has represented that those materials identified as **Topic L** contain and/or reference Bachem's highly confidential and competitively sensitive business information, trade secrets, and business strategies, as well as information received in confidence from other non-parties.  Bachem represented that such materials contain and/or reference proprietary, confidential, and sensitive business information regarding

- 20 -

Bachem's business relationships, and the research, development, manufacture, governmental approval, marketing, purchase, and sale of proprietary products. Bachem produced documents or testified in deposition in reliance on confidentiality provisions of the Discovery Confidentiality Order (Dkt. No. 55).

b.      Bachem and the parties will suffer a clearly defined and serious irreparable injury if the materials identified as **Topic L** are not sealed. Bachem has represented that these materials also contain and/or reference sensitive customer relationships with non-parties that could be adversely affected if these materials were made public. If these materials are not sealed, public disclosure will cause harm to Bachem's and the parties' current and prospective businesses, including, but not limited to, unfair advantage to competitors with knowledge of Bachem's and the parties' relationships as well as damage to those relationships, causing potentially significant financial damage or other irreparable harm.

36.   The Confidential Materials identified as **Topic M** of **Exhibit A** contain and/or reference confidential documents produced by, or deposition testimony from, Polypeptides Laboratories, Inc., and PolyPeptide Laboratories Sweden AB (together "PolyPeptide").

     a.    Polypeptide and the parties have a strong and legitimate basis for sealing this material.  Those materials identified as **Topic M** contain and/or reference "confidential information regarding business agreements, testing, business strategy, summaries of meetings with potential business partners, ANDA, filings with governmental entities, and business strategy." **Exhibit C**, Declaration of Sheila Raftery Wiggins in Support of Motion to Seal ("Wiggins Decl.") ¶ 5.

     b.    PolyPeptide and the parties will suffer a clearly defined and serious irreparable injury if the materials identified as **Topic M** are not sealed.  PolyPeptide asserts "that public disclosure of its Non-party PolyPeptide Confidential Information would permit competitors to potentially and likely use such information to PolyPeptide's detriment." **Exhibit C**, Wiggins Decl. ¶ 7.

37.    The Confidential Materials identified as **Topic N** of **Exhibit A** contain and/or reference confidential documents produced by BCN Peptides, S.A. ("BCN").

     a.    BCN and the parties have a strong and legitimate basis for sealing this material.  Those materials identified as **Topic N** contain and/or reference highly confidential and competitively sensitive business information, trade secrets, business strategies, as well as information

received in confidence from other non-parties.  Such materials contain

and/or reference proprietary, confidential, and sensitive business information

regarding BCN's business relationships, and the research, development,

manufacture, governmental approval, marketing, purchase, and sale of

proprietary products.  BCN produced documents or testified in deposition in

reliance on confidentiality provisions of the Discovery Confidentiality Order

(Dkt. No. 55).

   b.  BCN and the parties will suffer a clearly defined and serious

irreparable injury if the materials identified as **Topic N** are not sealed.

These materials also contain and/or reference sensitive customer

relationships with non-parties that could be adversely affected if these

materials were made public.  If these materials are not sealed, public

disclosure of this information will cause harm to BCN's and the parties'

current and prospective businesses, including, but not limited to, unfair

advantage to competitors with knowledge of BCN's and the parties'

relationships as well as damage to those relationships, causing potentially

significant financial damage or other irreparable harm.

38.  The Confidential Materials identified as **Topic O** of **Exhibit A**

contain and/or reference all confidential documents produced by Eagle

Pharmaceuticals, Inc. ("Eagle").

a.      Eagle and the parties have a strong and legitimate basis for

sealing this material.  Those materials identified as **Topic O** contain and/or

reference "Non-Party Eagle's propriety commercial and business interest,

including competitively sensitive business information concerning Eagle's

confidential supplier relationships for the active pharmaceutical ingredient in

its ANDA product, which is the type of information that Eagle maintains in

strict confidence in light of the highly competitive pharmaceutical

marketplace."  **Exhibit B**, Declaration of Christine I. Gannon ("Gannon

Decl.") ¶ 4.

b.      Eagle and the parties will suffer a clearly defined and serious

irreparable injury "including but not limited to, financial damage, damage to

business relationships, damage to commercial standing, and/or other

irreparable harm if any of the confidential proprietary, commercial, and

competitively sensitive business information . . . is publicly disclosed."

**Exhibit B**, Gannon Decl. ¶ 5.  For example, "[c]ompetitors would

improperly and unfairly benefit from the disclosure of Non-Party Eagle's

non-public competitively sensitive business information and would likely

use the confidential information to enhance their market or negotiation

position and cause Eagle to lose their competitive advantage in obtaining

necessary active pharmaceutical ingredient supplies in the highly

competitive pharmaceutical industry." *Id.*

39.     The Confidential Materials identified as **Topic P** of **Exhibit A** contain

and/or reference all confidential documents produced by Sandoz Inc. ("Sandoz").

      a.     Sandoz and the parties have a strong and legitimate basis for

sealing this material.  Sandoz has represented the following: The documents

Sandoz produced in this matter contain sensitive, proprietary business

information about proprietary and confidential product formulations, launch

and/or supply strategies, and other sensitive information.  Sandoz has a

legitimate private interest in seeking to restrict access to this sensitive and

valuable business information.  There is little, if any, public interest in

disclosing Sandoz' competitively sensitive propriety business

information.  These two documents are of the type that pharmaceutical

companies generally treat as confidential and the Discovery Confidentiality

Order entered by this Court on June 20, 2017 (Dkt. No. 55) specifically

allows such information to be kept confidential.

      b.     Sandoz has represented the following:  If filed on the docket,

the information contained in these documents will reveal the confidential

details of Sandoz' business and proprietary information, including

information regarding product formulation and launch and/or supply

- 25 -

strategies, and make this information available to competitors. Disclosure of this information will cause irreparable harm to Sandoz' business and future business plans, and could result in lost business. These documents contain confidential information throughout and, thus, there is no practicable less restrictive alternative to sealing these documents in their entirety.

40.     For all materials to be sealed identified as **Topics A-P**, no less restrictive alternative to the requested relief is presently available or practicable. *See* **Exhibit B**, Gannon Decl. ¶ 8; **Exhibit C**, Wiggins Decl. ¶ 8. The parties have filed redacted, publicly available versions of their supplemental summary judgment briefing that contain and/or reference Confidential Materials redacted. (*See* Dkt. Nos. 258, 259.) Therefore, the public interest in having access to the non-confidential portions of the parties' summary judgment briefing materials has been served. *See CDK Global, LLC v. Tulley Automotive Group, Inc.*, No. 15–3103 (KM), 2017 WL 870400, at *4 (D.N.J. March 3, 2017) (finding that the parties were in the "best position to judge the sensitivity and importance of the documents in question" when proposing redactions of confidential information).

41.     On March 5, 2020, the Court granted the parties' Joint Motion to Permanently Seal Confidential Information regarding materials from the parties' summary judgment briefings. (*See* Dkt. No. 242.)

- 26 -

42.     The parties, non-parties, and the Court have expended considerable time, effort, and resources in negotiating and seeking Court approval for various confidentiality orders in order to safeguard and protect the confidentiality of this information.  *See* Joint Letter Regarding Stipulated Discovery Confidentiality Order (Dkt. No. 54); Stipulated Discovery Order Discovery (Dkt. No. 55); Joint Letter Regarding Non-Party Eagle Confidential Information (Dkt. No. 122); Order Regarding Non-Party Eagle Confidential Information (Dkt. No. 123); Order for Discovery Dispute Regarding Non-Party Eagle's Confidential Information (Dkt. No. 131).

43.     Good cause exists for the entry of an Order sealing Confidential Materials submitted by the parties.

44.     The parties respectfully request that the Court grant the parties' Joint Motion to Permanently Seal Confidential Information in Docket Numbers 256 and 257, and that the Clerk of the Court permanently seal the following docket entries: Dkt. No. 256 and Dkt. No. 257.

I hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746

that the foregoing statements made by me are true and correct.


Dated: May 24, 2021

George C. Jones